[No. 4296.]

50   633
121   134

ANNA E. COOK et al. v. FRANK G. NORMAN.

COMMUNITY PROPERTY.—Although as the law stood in this State prior to 1861, upon the death of the wife one-half of the community property went to the surviving husband and one-half to the children, yet the entire community property remained subject to the payment of the community debts, and the surviving husband had a right to sell real estate which had been community property for the purpose of paying the community debts.

IDEM.—In such case, the purchaser in good faith from the surviving hus-
band, in order to support his title as against a child of the community,
is not bound to show that the sale of the land by the husband was
necessary to provide for the payment of the community debts.

IDEM.—The fact that the community debts were those of a firm of which
the surviving husband was a member, and that the firm was dissolved
before the death of the wife, and a member of the firm, other than the
husband, undertook to pay these debts, and received assets for that
purpose, did not free the community property from its legal liability for
the debts.

IDEM.—As against the husband, in such case, the interest of the children in
the community property became vested on the death of the wife, and if
he afterwards sold it, the children were entitled to an accounting.

APPEAL from the District Court, Nineteenth Judicial District, City and County of San Francisco.

Ejectment to recover an undivided one-fourth of a lot at the northwest corner of Valencia and Twentieth streets, city and county of San Francisco. The plaintiffs were the children of Charles W. Cook and Charlotte F. Cook, who intermarried in 1849. In 1853, the husband and several other persons became the owners, as tenants in common, of a tract of about twenty-five acres of land, of which the demanded premises formed a part. In 1855, a partition was made, and Cook entered into possession of the part assigned to him. His wife, Charlotte F., died in 1857. For several years prior to her death, Cook had been a member of the firm of Palmer, Cook & Co. A few days previous to her death, Cook dissolved his connection with the firm, at which time it was indebted to the amount of several hundred thousand dollars, and J. C. Palmer, one of the firm, assumed the payment of the debts, and retained in his hands sufficient of the assets of the firm for that purpose; but the debts had not been paid at the time of the death of the wife. There were no debts of the community except those of Palmer, Cook & Co. The surviving husband, in the year 1861, made a *bona fide* sale of the premises set off to him by the partition, to B. F. Brooks, for the sum of $6000, and Brooks soon after sold the lot in dispute to the defendant. It does not appear from the record whether the sale of the premises by the husband was necessary to

provide for the payment of the community debts, or whether the husband applied the proceeds of the sale to pay the debts. The court below rendered judgment for the defendant, and the plaintiffs appealed.

The eleventh section of the act of 1850, defining the rights of husband and wife, which was in full force at the death of Mrs. Cook, is as follows: "Upon the dissolution of the community by the death of either husband or wife, one-half of the common property shall go to the survivor, and the other half to the descendants of the deceased husband or wife, subject to the payment of the debts of the deceased."

By the act of May 8, 1861 (Stats. 1861, p. 310), it was provided that upon the dissolution of the community by the death of the wife, the entire common property should go to the surviving husband.

*Sawyer & Ball,* for the Appellants.

We are aware this Court has held, in the matter of the *Estate of Tompkins* (12 Cal. 124), that the whole of the common property is subject to the payment of the debts of the husband upon his decease; but where the marriage is dissolved by the death of the wife, it is by no means clear that her descendants are not entitled to one-half of the property, free from any claim on the part of the creditors of the husband, unless they are also creditors of the community. (*Packard* v. *Arellanes,* 17 Cal. 538.)

There were no community debts, nor debts of the husband, unless the debts of Palmer, Cook & Co. can be called debts of Cook. Besides, there was property set apart to pay those debts, and the law presumes they were paid with such property. Furthermore, that cannot avail the defendant, unless he shows this property was taken to pay such debts. The finding of facts entirely negatives any such theory.

The decisions of the Supreme Courts of Texas and Louisiana coincide with our Supreme Court upon similar questions. Those courts, in repeated decisions, hold that upon the dissolution of the marriage by death of one of the

spouses, the ganancial (common) property vests absolutely, one-half in the survivor and one-half in the heirs of deceased. (*Thompson* v. *Cragg*, 24 Tex. 600; *Duncan* v. *Rowle*, 16 Tex. 433; Civil Code La., Arts. 2373, 2375, 2376 and 2378; *Broussard* v. *Bernard*, 4 Ia. 140; *German* v. *Gay*, 5 Ia. 361; *Beard* v. *Knox*, 5 Cal. 252; *Smith* v. *Smith*, 12 Cal. 216.)

*I. N. Thorne and Nathaniel Bennett*, for the Respondent.

The legal proposition upon which we insist as deducible from the facts in the case is, that the sale by Cook of the community property, after the death of his wife, for a valuable consideration, conveyed to the purchaser a title discharged of all claims of the community and of the heirs of the wife. When there were debts of the community, on the death of the wife it will not be pretended that it was not just as necessary to pay them after her death as before. It will not be pretended that the community property did not remain just as liable for such payments after her death as before. How then were such debts to be paid?

No administration could be had on the community estate of the wife after her death. It will not be claimed that her share of the community property was exempt from the payment of her share of the indebtedness. How then will it be made available for that purpose? There is no possible way, except to leave the whole matter to the good sense and discretion of the surviving husband; and there is exactly where our former law left it. It is not to be presumed that the husband will act otherwise than for the best interests of all concerned. His power to sell the real estate of the community is the same as to sell the personal estate of the community; and he may sell either, or both, for the purpose of settling the debts of the community. And he is, undoubtedly, personally responsible for the good faith of his administration. If he sells either personal or real estate of the community, the purchaser takes a title free and clear of all claims of the heirs of the wife, unless there be collusion between him and the surviving husband to defraud the heirs. The power of the surviving husband over

the community property is the same as that of a surviving partner over the partnership effects. Such is the uniform current of decisions, not only of our courts but of the courts of Louisiana and Texas. (*Estate of Tompkins*, 12 Cal. 114, 124; *Packard* v. *Arellanes*, 17 Id. 526, 535 *et seq.; Ord and Wife* v. *De La Guerra*, 18 Id. 67, 73 *et seq.; Jones* v. *Jones*, 15 Tex. 143, 146 *et seq.; Primm* v. *Barton*, 18 Id. 206; *Good* v. *Coombs*, 28 Id. 34; *Guice* v. *Lawrence*, 2 La. Ann. 226; *Womack* v. *Shilton*, 29 Tex. 503; *Succession of McLean*, 12 La. Ann. 222; 17 La. R. 238; 1 Rob. La. R. 378–9; Id. 387.)

By the COURT:

This is an action of ejectment. The plaintiffs are the children of Charles W. Cook and his wife Charlotte, who deceased in 1857, and the premises were acquired by Cook in 1853, and belonged to the marital community.

The defendants derive their title from Cook by deed delivered by him subsequently to the death of his wife. It was found by the court that before the death of the wife, Cook, the husband, had been a member of the banking firm of Palmer, Cook & Co., from which firm he had retired shortly previous to her death, and that upon the retirement of Cook the firm was largely indebted, though J. C. Palmer, a member of the firm, had assumed the payment of its entire indebtedness, and retained assets of the firm sufficient for that purpose; but these debts had not in fact been paid at the death of the wife.

1. Upon the death of the wife, the entire property of the marital community of which she had been a member, remained subject to the payment of the community debts.

2. The surviving husband was under obligation to discharge those community debts, and had a right to do so by applying the community property to that purpose.

3. It is found by the court below, in this case, that when the community was dissolved by the death of the wife there was a large amount of outstanding indebtedness, for the payment of which the property of the community was liable. The circumstance, also found, that Palmer had, as between Cook and himself, assumed to pay this indebtedness, and

that there were assets in the hands of Palmer sufficient, *if applied,* to discharge those debts, is of no import as freeing the community property from its legal liability in this respect.

4. And we have no doubt that under such circumstances it was competent for the surviving husband to convey the estate belonging to the late community, the purpose of such conveyance being to satisfy the debts, with the payment of which the community property is charged by law.

5. The principal question, however, is whether a purchaser in good faith from the surviving husband, under such circumstances, is bound to show, in order to support his title as against a child of the community, that the sale of the premises conveyed to him was, in point of fact, necessary to provide for the payment of the community debts. And this question must, we think, be answered in the negative. The authority to sell the property of the community belongs to him as the survivor of the community, and is the same in its nature as was his power to do so during the existence of the community. The death of the wife did not deprive him of his power in this respect, and the purchaser dealing with him in good faith acquired a title valid in point of law as though the community had not been dissolved.

This general view is supported by the reasoning to be found in the adjudicated cases in this State and elsewhere, and is not opposed by the cases of *Broad* v. *Broad* (40 Cal. 493), and *Broad* v. *Murray* (44 Cal. 228).

The surviving husband was a party in each of those cases, and it is not doubted that as against him the interest of the children of the community is to be taken as vested, and entitling them to have an accounting or partition, or other appropriate relief.

Judgment affirmed.