[Department One — June 23, 1883.]

JAMES JOHNSTON ET AL., APPELLANTS, *v.* THE SAN FRANCISCO SAVINGS UNION, RESPONDENT.

FORECLOSURE — COMMUNITY PROPERTY — PARTIES. — The children of a deceased mother are tenants in common of the legal title with their father to the community property, with power in the father to convey or mortgage the whole estate so far as is necessary to provide for the debts of the community ; and in an action for the foreclosure of a mortgage executed by the father subsequent to the death of the mother, they are necessary parties.

ID. — JURISDICTION — INFANTS — SUMMONS. — Where such children are infants and are made parties defendant, they must be served with the summons. Until this is done the court has no jurisdiction of them, and the appointment of a guardian *ad litem* is void.

ID.—Nor does the court acquire jurisdiction of such infants where, after the trial, they petition to intervene and have a guardian *ad litem* appointed, and thereafter file an ' amended answer " by a guardian appointed upon such petition.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*W. H. Tompkins,* and *Calhoun Benham,* for Appellants.

The decree is void because the plaintiffs were not parties to the foreclosure suit.

1.  The complaint did not make them parties by name.

2.  They were not made parties by service of process under fictitious names.

3.  The answer filed in their names was not an appearance. (7 Leigh, 225; 37 Cal. 348; 6 Cal. 415; 42 Cal. 578; 50 Cal. 588; 50 Cal. 578.)

4.  There was no proof of the signatures to the petition for leave to intervene.  (*Galpin* v. *Page,* 18 Wall. 350; *In re McKibbin,* 12 Bank. Reg. 101; 9 Cal. 315; 9 Ark. 432; 20 Cal. 687; 9 Cal. 616; 4 Cold. 129; 12 Cal. 490; *Shriver's Lessee* v. *Lyman,* 2 How. 43.)

5.  The minors never availed themselves of the leave to intervene in the foreclosure suit.  No one signed the amended *answer* on their behalf, and that answer is the only pleading filed in their names after the leave to intervene was granted. (See amended answer, Trans. fol. 275.)

6.  That amended answer did not make the minors parties. It was not an appearance for them.

7.  The petition for leave to intervene was *ultra vires* of the minors.   (Civ. Code, § 42; 43 Miss. 129, 257; 38 Ill. 150; 2 How. 60.)

8.  The record does not show or raise any legal presumption that the guardian *ad litem* ever had notice of his appointment or ever assented to it.

*A. & H. C. Campbell,* and *Fox & Kellogg,* for Respondent.

The minor plaintiffs, John F. Johnston and Francis T. Johnston, were properly before the court in *San Francisco Savings*

*Union* v. *Johnston et al.* A guardian may be appointed in any case where the court or judge deems it expedient. (Code Civ. Proc. § 372.)

Both were over the age of fourteen years, and by their application claimed an interest in the action. (Code Civ. Proc. § 373.)

And as intervenors they became *plaintiffs*, demanding relief against both the original plaintiff and two of the defendants. (Code Civ. Proc. §§ 387, 373.)

The title of their plea does not establish its character. Their plea was made and filed "as a ground of affirmative relief," and upon their application, stating "that they desire to intervene therein."

The facts set out will determine its character. (*Holmes* v. *Richet,* 56 Cal. 311.)

The intervention and the answer of defendants raised the issue of title, and having raised it, they cannot complain that the court determined it. (*Odd Fellows Sav. Bank* v. *Noonan,* 11 Pac. C. L. J. 149.)

Treating the minors as defendants, the guardian *ad litem* was properly appointed. They were over the age of fourteen years, and the appointment was made on their application. For the purpose of such an application, the service of the summons was not required. (Code Civ. Proc. § 373.)

PER CURIAM. — Plaintiffs herein — who are the appellants — brought the action to quiet their title to an undivided portion of certain lands. The Superior Court entered a decree that the *defendant's* title be forever quieted as against plaintiffs, and all persons claiming under them, and that each of the plaintiffs, and all persons claiming under them, be barred and foreclosed from ever hereafter asserting any claim, etc. The plaintiffs are the children and heirs at law of James Johnston, senior, and Petra, his wife, both deceased. Petra died April 30, 1861, and James, senior, October 3, 1879. After the death of Petra, James, senior, borrowed certain moneys of the present defendant, to secure the payment of which he executed a mortgage upon the lands described in the complaint, which had been acquired during the existence of the marriage.

In the lifetime of the surviving husband, the present defendant commenced an action to foreclose the mortgage, and for the sale of all the lands to pay the mortgage debt. In that action certain proceedings were had which resulted in a decree directing a sale, upon which an order of sale issued; the lands were sold, and the plaintiff in that action, defendant in this, became the purchaser of the lands and received a deed therefor. When the action to foreclose was brought, and decree entered, two of the present plaintiffs — John F. and Francis T. Johnston — were infants.

The question whether the persons last named are bound by the decree of foreclosure must depend upon the *petition* filed in the foreclosure suit, purporting to be the petition of John F. Johnston and Francis T. Johnston for the appointment of their brother, James Johnston, junior, their *guardian ad litem;* the alleged written *consent* of the latter; the order of court appointing him guardian, etc.; the *stipulation* of May 28, 1877, and the amended answer of May 28, 1877. It is manifest that neither any unauthorized appearance by attorneys assuming to appear for the infants, nor any stipulation between the plaintiff in the foreclosure suit and the adult defendants therein, made before a guardian was appointed, could affect the rights of the infants.

On the 17th day of February, 1877, after the action to foreclose the mortgage had been tried, there was filed, in said action, a paper-writing which reads as follows :—

"The petition of John F. Johnston and Francis T. Johnston respectfully represents:—

"That they are minors and above fourteen years old; that they have an interest in the above entitled action; that they desire to intervene therein; that they respectfully request of the judge of this honorable court that he will appoint their brother, James Johnston, their guardian *ad litem* in said action to appear and represent their interests therein.

"JOHN FRANCIS JOHNSTON,

"FRANCIS THOMAS JOHNSTON.

"Dated San Mateo, February 16, 1877."

Accompanying, or indorsed on which, was the following :—

"I hereby consent to act as guardian *ad litem* for my brothers,

John F. Johnston and Francis T. Johnston, in the foregoing entitled action.

"JAMES JOHNSTON, JR.

"Dated San Mateo, February 16, 1877."

May 17, 1877, the district judge made this order:—

"John Francis Johnston and Francis Thomas Johnston, minors over the age of fourteen years, having heretofore, to wit, on February 17, 1877, filed in said action their petition and application for leave to intervene in said action and for an order appointing their brother, James Johnston, junior, their guardian *ad litem* in said action—to appear and represent them therein; and said James Johnston, junior, having filed in said action his written consent to such appointment: Now, on motion of Sol. A. Sharp, Esq., of counsel for said minors, it is ordered that said John Francis Johnston and Francis Thomas Johnston be and they are hereby allowed to intervene and file their intervention in said action, and said James Johnston, junior, is hereby appointed guardian *ad litem* in said action for said minors; and it is further ordered that such intervention be filed within five days from the date hereof.

"Dated April 30, 1877.

"(Signed)          WM. P. DAINGERFIELD, District Judge."

[Indorsed.]

"Order allowing J. F. Johnston and F. T. Johnston, minors, to intervene and appointing their guardian *ad litem*.

"Filed May 17, 1877."

May 28, 1877, the following stipulation was filed:—

"It is mutually stipulated and agreed by and between the parties to this cause, their counsel and attorneys respectively, as follows:—

"*First*—That defendants, James Johnston, Jr., John F. Johnston and Francis T. Johnston (the two last by their guardian), shall file as of this date their amended answer and cross-complaint in this cause. That the verification of said answer and cross-complaint is waived.

"*Second*—That the defense of the Statute of Limitations in said answer be deemed denied, and that the answer of the plaintiff to the original cross-complaint be and is hereby taken as the answer of the plaintiff to the amended complaint.

" *Third* — That the answer of Parker Nicholson to the original cross-complaint of James Johnston, Jr., John F. Johnston and Francis T. Johnston, be taken as his answer to the amended cross-complaint this day filed.

" *Fourth* — That this case be submitted to the court for trial and decision on the testimony heretofore taken, on Wednesday next, either party to offer such additional testimony as they may be advised.

"Dated this 28th day of May, 1877.

"CAMPBELL, FOX & CAMPBELL,

"H. C. CAMPBELL,

"Attorneys for Plaintiff.

"C. N. FOX,

" Attorney for defendant Parker Nicholson.

"SOL. A. SHARP,

"W. H. TOMPKINS,

" Attorneys for James Johnston, James Johnston, Jr., John F. Johnston and Francis T. Johnston (by guardian).".

On the *same day* an " amended answer," purporting to be the amended answer of " James Johnston, Jr., sued herein by the fictitious name of John Doe, John F. Johnston, sued herein by the fictitious name of Richard Roe, and Francis T. Johnston, sued herein by the fictitious name of John White," was filed. This amended answer had been verified by a *third* " James Johnston," on the 23d of February, 1877, nearly three months before the pretended appointment of a guardian *ad litem*, the verification stating that " said James Johnston, Jr., and guardian *ad litem* is absent from the city and county."  Further verification was waived by the stipulation.

In *Cook* v. *Norman,* 50 Cal. 633, it was held that under the Act of 1850, " concerning husband and wife," it was competent for the surviving husband to convey the estate belonging to the late community, the purpose of such conveyance being to satisfy the debts, with the payment of which the community property was charged; and further, that a purchaser " in good faith " from the surviving husband was not bound to show, to support his title as against the children of the community, that the sale of the premises was, in point of fact, necessary to provide for the payment of the community debts.

Even if it be admitted that the rule which forbids the adjudication in a suit to foreclose a mortgage of a title *adverse* to that of the mortgagor is not jurisdictional, and that, if the holder of such adverse title has his day in court, and his title is held to be subject to the lien of the mortgage, he cannot afterwards attack the decree *collaterally*, he is certainly not bound by the decree, unless the court had acquired jurisdiction of his person and title. In the view we take of this case it is not necessary to decide whether the title of the infants was *adverse* to that of the surviving husband.

Assuming, for the purposes of this case, that, in the suit to foreclose the mortgage made upon the lands of the late community by the surviving husband, the burden was not cast upon the mortgagee of alleging or proving that the money paid was necessary to provide for the payment of community debts, but that it was for the children, by way of defense, to prove that the mortgagee had notice that there were no community debts, or that the debts were of less amount, the present plaintiffs were not only proper but necessary parties to the foreclosure suit. The last clause of section 726 of the Code of Civil Procedure has no bearing upon the question. The children of James and Petra Johnston were not holding an unrecorded conveyance from the mortgagor, nor were they persons having a mere lien upon the property mortgaged. On the death of their mother they became owners of one half the community property subject to the community debts, and liable, perhaps, to become subject to the debts by their father *substituted* for the community debts. If their father had power to mortgage their interest in the lands to raise money to pay off prior debts of the former community, it was upon the theory that the law made him their agent for that purpose. As to the legal title of an undivided moiety of the lands, descent was cast upon them on the death of their mother. The object of the suit was to sell and transfer their title as well as that of their father. They had an interest to protect it; to deny the existence of the mortgage, or to reduce the amount alleged to be secured by it; to prove that there were no community debts, or that they were less than the advance made by the mortgagee, and that the mortgagee had notice of the facts with reference to such indebtedness; that their father

had exceeded his limited authority, and that the mortgagee knew it was not a mortgage in "good faith." As they were necessary parties to the foreclosure suit, the decree therein was void with respect to one half the lands mortgaged, unless the court acquired jurisdiction of the infants. They and their father were tenants in common in the legal title, with power in the latter to convey or mortgage the estate of the former, so far as was necessary to provide for the debts of the community. He mortgaged their interest with his own, if the mortgagee had no notice that the community was not indebted. The mortgage created a lien on the lands of the children, if the necessity existed which authorized him to execute it, or, in any event, if the mortgagee was innocent.

Whether, however, the title of the children was *adverse* to that of the father, within the meaning of the rule to which we have adverted, or the mortgage is to be treated as executed by the children, in case the mortgagee advanced its money in "good faith," they are not bound by the decree, unless the court had jurisdiction over them and their property.

The action to foreclose the mortgage was entitled, " The San Francisco Savings Union, plaintiff, *v.* James Johnston (Senior), Parker Nicholson, Michael Kane, John Doe, Richard Roe, John White, John Brown, John Green, John Black, John Blue, and John Yellow, the last eight named of whom are sued by fictitious names for the reason that plaintiff does not know their true names, defendants."

None of the present plaintiffs were made defendants in the foreclosure suit by name, nor was any one of them served with summons therein. The present plaintiff, James Johnston, Jr., was of full age when that suit was brought, voluntarily appeared therein, and it may be admitted is bound by the judgment. But, as we have seen, the others of the present plaintiffs were infants. There appears in the judgment roll in the action to foreclose a writing purporting to be "the joint and several answers" of " James Johnston, Jr., sued herein by the fictitious name of John Doe, John F. Johnston, sued herein by the fictitious name of Richard Roe, and Francis T. Johnston, sued herein by the fictitious name of John White." The writing is signed, "Sol. A. Sharp, Walter Tompkins, attorneys for defend-

ants James Johnston, Jr., et als." It is plain that, as we have said, this paper, filed long before there was any attempt to appoint a guardian, and which does not purport to be by a guardian, gave no jurisdiction of the infants. The amended answer, filed after the attempted appointment of guardian, purporting to be the answer of " James Johnston, Jr., sued herein by the fictitious name of John Doe, John F. Johnston, sued herein by the fictitious name of Richard Roe, and Francis T. Johnston, sued herein by the fictitious name of John White, by their guardian *ad litem* James Johnston, Jr.," is almost a literal copy of the former answer, with the exception that after the names of the defendants are inserted the words "by their guardian *ad litem* James Johnston, Jr." The amended answer is what it purports to be, amended *answer* by persons averring themselves to be *defendants*, sued by certain fictitious names. The person who assumed thus to amend a former answer, or to answer for infant defendants, was never legally appointed their guardian. If the order appointing him can be construed an attempt to make him guardian *ad litem* for infant defendants, it was void, simply because the infants had never been served with summons. (Code Civ. Proc. § 373.) The court acquires jurisdiction of the persons of infant defendants so as to authorize the appointment of a guardian *ad litem* for them only by service of summons upon the infants. Even the stipulation between the attorneys for the plaintiff in the foreclosure suit and the alleged guardian did not provide for the filing by him of a *complaint in intervention,* but for the filing of " an answer and cross-complaint." True the judge's order of May 17, 1877, made on motion of " Sol. A. Sharp, of counsel for said *minors,"* was to the effect " that the said John F. and Francis T. Johnston be allowed to intervene and file their *intervention* in said action, and said James Johnston, Jr., is hereby appointed guardian *ad litem* in said action." Even if the order of the *judge* be considered an order of the *court,* and the order permitting intervention *after* the trial (Code Civ. Proc. § 387) be treated as only erroneous, and not in excess of jurisdiction, and if it be assumed that infants seeking to intervene can be said to be *plaintiffs,* for whom a guardian can be appointed under the first subdivision of section 373 of the Code of Civil

Procedure, no complaint in intervention was in fact filed. The court did not acquire jurisdiction by styling an "amended answer" "a complaint by intervenors." Counsel in the foreclosure suit, discovering after the trial of the case that they had failed to make the infants parties, adopted means — the best, perhaps, at their command — to secure a judgment which should conclude the infants. But there are no means of avoiding the provision of the Code which requires service of summons upon infant defendants. If it be true that they were necessary parties to the action, by reason of the law as laid down in *Cook* v. *Norman, supra,* they, in their capacity of defendants, could have made the defense set forth in the "amended answer and cross-complaint," had they been brought within the jurisdiction.

But the judgment in the mortgage suit only purports to bar the infants as defendants. The judgment recites — "This cause coming on regularly to be heard . . . . upon the *pleadings* of the respective parties, the minor *defendants,* John F. Johnston and Francis T. Johnston, appearing and being represented by James Johnston, Jr., their guardian *ad litem,* duly appointed, and Sol. A. Sharp, Esq., and Walter Tompkins, Esq., their attorneys," etc. In a subsequent place the present plaintiffs are mentioned as "intervenors," and after providing for a sale of the mortgaged premises, etc., the decree proceeds to order and adjudge: "That the *defendants* and all persons claiming or to claim from or under them or any of them . . . . be forever barred and foreclosed of and from all equity of redemption and claim of in and to said portion or portions of said mortgaged premises," etc. The infants were not both defendants and intervenors. If they were defendants they were not barred, because they had not been served with summons. If intervenors, the decree does not bar them by its terms. It will not do to say that the mere *name* given them in different portions of the roll is entirely immaterial. The court was dealing with the rights of *infants,* over whom it could acquire jurisdiction only after strict compliance with the statute.

Judgment reversed and cause remanded for a new trial.

Hearing in Bank denied.