(January 10, 1898.)

## VON ROSENBERG v. PERRAULT.

[51 Pac. 774.]

STATUS OF COMMUNITY PROPERTY UPON DEATH OF ONE SPOUSE UNDER THE LAW OF 1874—SURVIVING SPOUSE HOLDS THE LEGAL TITLE ONE-HALF FOR HIMSELF, THE OTHER IN TRUST FOR THE LAWFUL HEIRS, THE CHILDREN.—S. and wife acquired lands during coverture, the title being conveyed to S. in 1871 and 1873; the wife died in 1877, leaving her husband and four children surviving her; S. again married; in 1887, S. and his second wife by deed, for the consideration of $7,450, conveyed said lands to K.; in 1895, the children of S. and his deceased wife brought suit against the heirs of K., who had died, for a partition of the said lands, claiming under their deceased mother by reason of an act passed in 1874, and repealed in 1879, giving the community property, on the death of one spouse, one-half to the surviving spouse, the other half to the descendants of the deceased spouse, subject to debts of the deceased; plaintiffs did not allege or prove the extent of the assets and liabilities of the community at the death of their deceased mother, nor that the community was free from debt, nor that K. purchased with notice of their claims; the trial court gave judgment of nonsuit, from which plaintiffs appealed. *Held*, that the surviving spouse held the legal title one-half for himself, the other in trust for plaintiffs; that the husband could sell the

lands to pay community debts, and that the existence of such debts and of the necessity of the sale are presumed from the lapse of time and that the judgment of nonsuit was proper.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

S. L. Tipton and W. E. Borah, for Appellants.

The statute, under and by reason of which the plaintiff asserts title to one-half the property in question, reads as follows: "Upon the dissolution of the community by the death of either the husband or the wife, one-half of the common property shall go to the survivor and the other half to the descendants of the deceased husband or wife; the whole, however, is subject to payment of the debts of the deceased. If there be no descendants of the deceased husband or wife, the whole shall go to the survivor subject to such payment. (8th Sess. Laws of Idaho Territory, sec. 11.) As we understand, the ruling of the court was based largely upon the proposition that the burden was upon the children, even after the time of ten years had elapsed, to show that the property was not sold to pay community debts or that there were no community debts. As we are placed in a position of defending the motion upon all grounds we call attention to the following authorities in support of the proposition above stated: *Broad v. Broad,* 40 Cal. 493; *Broad v. Murray,* 44 Cal. 228; *Johnson v. Bush,* 49 Cal. 198; *Johnson v. San Francisco Sav. Union,* 63 Cal. 554; Freeman on Cotenancy, sec. 149; Platt on Property Rights of Married Women, pp. 7, 136. As to the burden of proof to show that there were debts and that the property was sold to pay community debts, we call particular attention to the following authorities: *Moody v. Butler,* 63 Tex. 210; *Johnson v. Harrison,* 48 Tex. 257; *Jones v. Jones,* 15 Tex. 143; *Murphy v. Jurey,* 39 La. Ann. 785, 2 South. 575; *Wright v. McGinty,* 37 Tex. 733; *Gay v. Herbert,* 44 La. Ann. 301, 10 South. 775; *Easthan v. Sims,* 32 S. W. 359. No administration was necessary under this statute. (*Ord v. DeLagara,* 18 Cal. 67; *Packard v. Arellanes,* 17 Cal. 525, 536; *Sanger v. Heirs of Moody,* 60 Tex. 96.) Upon the death of the wife the heirs of the deceased wife take a legal title as a tenant in common with the surviving husband

in the community property. (Platt on Property Rights of Married Women, p. 7; *Estate of Thompkins,* 12 Cal. 124; *Ord v. De La Guerra,* 18 Cal. 74.) The legal title is in the survivor and children, and they hold as tenants in common. (Platt on Rights of Married Women, sec. 39, p. 136; *Johnson v. Harrison,* 48 Tex. 268; *McAllister v. Farley,* 39 Tex. 552; *Kirkland v. Little,* 41 Tex. 460.) In the absence of evidence to establish the fact that the lands are sold to pay community debts the executors' deed conveyed but a half interest in the land. (*Moody v. Butler,* 36 Tex. 210; *Jones v. Jones,* 15 Tex. 143.) Although the heirs of the wife receive the property subject to the community debts, it is now settled that their action for the property may be maintained without allegation or proof of the liquidation or solvency of the community. (*Murphy v. Jurey,* 39 La. Ann. 785, 2 South. 575; *Glasscock v. Clark,* 33 La. 584.) There being no evidence of debts the presumption is none existed, and the burden is on the defense to show there were debts. (*Johnson v. Harrison,* 48 Tex. 257; *Hensel v. Kegans,* 79 Tex. 349, 15 S. W. 275; *Taylor v. Taylor,* 26 S. W. 819; *Galveston etc. R. R. Co. v. Butler,* 56 Tex. 506.)

Hawley & Puckett, George Ainslie and Brown & Cahalan, for Respondents.

The action is under section 4560 of the Revised Statutes. In order to maintain the action the parties must hold and also be in possession. The plaintiffs do not hold the land nor are they in possession of it. This form of action cannot be maintained by one out of possession against adverse claimants in possession. (Adams' Equity, 229; Freeman on Cotenancy, 497; Sedgwick and Wait on Trial of Title to Lands; *Brown v. Cranberry Co.,* 40 Fed. 849; *Florence v. Hopkins,* 46 N. Y. 182; *Sullivan v. Sullivan,* 66 N. Y. 42; *Hipp v. Babin,* 19 How. 279; *Brock v. Eastman,* 27 Vt. 660; *Burhans v. Burhans,* 2 Barb. 407; *Rozuer v. Johnson,* 35 Mo. 326; *Hoffman v. Bard,* 22 Mich. 59; *Coleman's Case,* 62 Pa. St. 252.) The interest of the wife in community property is a mere expectancy, like the interest which an heir may possess in the property of his ancestor, and has none of the attributes of an estate either at law or at equity. (Ballinger on Community Property, pp. 5, 77,

224, also secs. 230, 234, and notes; Platt on Property Rights of Married Women, 122; *Van Maren v. Johnson,* 15 Cal. 312; *De Godey v. De Godey,* 39 Cal. 164; *Greiner v. Greiner,* 58 Cal. 119; *Guile v. Lawrence,* 2 La. Ann. 226; *Spreckels v. Spreckels,* 116 Cal. 339, 58 Am. St. Rep. 170, 48 Pac. 228.) But it may be contended that Dr. Stephens held the land in question as trustee for the plaintiffs. If he did so hold an undivided one-half interest therein as such trustee, then the matter was in the nature of a resulting trust, and an innocent *bona fide* purchaser for value would take the property free of the trust. (*Ord v. La Guenor,* 18 Cal. 74; *Bayles v. Baxter,* 22 Cal. 575; *Hidden v. Jordan,* 21 Cal. 92; *Millard v. Hathaway,* 27 Cal. 119; *Currey v. Allen,* 34 Cal. 254; *Riley v. Martinelli,* 97 Cal. 575, 33 Am. St. Rep. 209, 32 Pac. 579; *Montgomery v. Noyes,* 73 Tex. 203, 11 S. W. 138; *Mayes v. Manning,* 73 Tex. 43, 11 S. W. 136.) The plaintiffs failed in their proof in a very important particular by failing to show that the property in question was not sold to pay community debts. This we contend was necessary to be shown by them and for that reason alone, if for no other—the motion for nonsuit was properly sustained. (*Cook v. Norman,* 50 Cal. 633; *Burleson v. Burleson,* 28 Tex. 416, 418.) The husband is entitled to represent the community in the settlement of its affairs, and possesses the authority to enable him to do so, and has the right, of course, to the possession and control of the community property and the power to make any disposition of it required for the purpose of settlement. (*Packard v. Arrellanes,* 17 Cal. 540; *Primm v. Barton,* 18 Tex. 206; *Jones v. Jones,* 15 Tex. 143; *In re McClean,* 12 La. Ann. 222; *Carter v. Conner,* 60 Tex. 52; *Jerfens v. Schnele,* 61 Tex. 255.)

QUARLES, J.—The plaintiffs (appellants here) brought their suit in the court below for a partition of certain lands described in the complaint, and in which they claim to be part owners, and tenants in common with certain of the defendants, The facts of the case, as they appear in the record, are substantially as follows: John L. Stephens, in 1867, married the mother of plaintiffs, who is known in the record only as "Cordelia B. Stephens." During coverture of said John L. and

Cordelia B. Stephens, they acquired the lands described in the complaint, as community property—the title being conveyed to said John L. Stephens, who held the paper record title to said lands—some of which was acquired in October, 1871, and the other portion in March, 1873. Cordelia B. Stephens died in November, 1877, leaving, surviving her, her said husband; John L. Stephens, and four children, the plaintiffs, Nina L. Stephens (now Von Rosenberg), born in February, 1872; Leland L. Stephens, born in February, 1870; Thaddeus D. Stephens, born January 11, 1874; and Mary Stephens, born in May, 1876. Afterward, but at what date does not appear, said John L. Stephens was married to Ida Story. In July, 1887, said John L. Stephens and his then wife, Ida Story Stephens, by deed duly made, acknowledged, and recorded, conveyed said lands to Milton Kelly for the consideration of $7,450. Milton Kelly held said lands during his life, and died in April, 1891, leaving surviving him the following named children, his only heirs at law, who are defendants herein, viz.: Katie A. Perrault, Ellen L. Bush, Anna D. Call, and Homer Kelly. It does not appear whether said John L. Stephens is dead or living. There is no allegation in the complaint, or proof in the record, showing whether Milton Kelly knew that said John L. Stephens was ever married to said Cordelia B. Stephens or not, or that he knew that the said lands were acquired during their coverture, or that he knew that they left any children. The defendant Jonas W. Brown was duly appointed administrator of the estate of said Milton Kelly. There are no liens of record upon or against said lands. The estate of said Cordelia B. Stephens was never probated or settled by proceedings in the probate court of Ada county—the county in which the said lands are situated. The above affirmative facts were shown on the trial, in part by admission of the defendants, and in part by evidence. At the close of the testimony offered by the plaintiffs, the defendants moved for a nonsuit, upon numerous grounds, the motion being as follows: "Whereupon the plaintiffs rest, and the defendants move for a judgment of nonsuit upon the following grounds: (1) That the plaintiffs have failed to prove a sufficient case to warrant a decision and judgment in their favor, in this: (a) That the property in question has not been proved to have been

community property of J. L. Stephens and Cordelia B. Stephens, deceased; (b) that the proof herein has not shown that the property was not sold to Milton Kelly in order to pay community debts; (c) that the proof herein fails to show that the proceeds of the property in question, sold by J. L. Stephens, were appropriated by Stephens for his own uses, and not used to pay community debts; (d) that the proof herein shows that Milton Kelly purchased the property in question in good faith, and for valuable consideration, and does not show that he had notice, either actual or constructive, of any rights of these plaintiffs, or either or any of them, in or to said property; (e) that the proof shows that the property in question was in the name of J. L. Stephens alone, and that said Stephens had a right to dispose of it and give a perfect title thereto; (f) that the proof shows that the property in question was the separate property of J. L. Stephens; (g) that the proof shows that at no time have the plaintiffs, or either of them, had possession, either actual or constructive, of the property, the subject matter of this suit, or any part thereof; (h)   that the proof shows that the plaintiffs have not at any time been, and that none or any of them have at any time been, tenants in common or coparceners with the defendants, or any or either of them, in said property, the subject matter of this action; (i) that the record evidence introduced shows said J. L. Stephens to have been the sole owner and possessor of said land and premises at the time of the sale thereof to Milton Kelly, and that said Kelly was an innocent purchaser, and bought said land in good faith, and without notice of any rights or equities of plaintiffs, for a valuable consideration; (j) that the evidence shows that the plaintiffs are barred from maintaining this action by the provisions of sections 4035 to 4040, inclusive, of the Code of Civil Procedure of this state; (k) that the evidence shows that any right of action that the plaintiffs may have by reason of the facts set forth is against J. L. Stephens, and not against defendants, or any or either of them, or against the property described.   (2) That the complaint does not state facts sufficient to constitute a cause of action.   (3) That the complaint herein, upon its face, shows that the cause of action attempted to be set forth is

barred by the provisions of sections 4035 to 4040, inclusive, of the Code of Civil Procedure of the state of Idaho." The court sustained said motion for nonsuit, and rendered judgment in favor of the defendants, from which judgment the plaintiffs appeal to this court.

In 1874 the territorial legislature of Idaho enacted a statute in words as follows: "Upon the dissolution of the community by the death of either the husband or the wife one-half of the common property shall go to the survivor and the other half to the descendants of the deceased husband or wife; the whole, however, is subject to payment of the debts of the deceased. If there be no descendants of the deceased husband or wife, the whole shall go to the survivor, subject to such payment." (8th Sess. Laws, p. 636, sec. 11.) This statute was repealed in 1879. Under the above statute the plaintiffs claim title to an undivided one-half interest in and to said lands. The defendants contend that the plaintiffs must fail in their action, and that the judgment of nonsuit was proper, among other reasons, for the following, to wit: (1) The burden of proof was on the plaintiffs to show that the said lands were not sold by the said John L. Stephens to pay community debts, and this they failed to do. (2) That the said Milton Kelly was an innocent purchaser, for a valuable consideration, without knowledge or notice of the marriage of said John L. and Cordelia B. Stephens, and did not know that they left children; and the record title to said lands being in said John L. Stephens, and the said Milton Kelly having purchased without any notice of the claims of the plaintiffs, his title is protected in law and in equity. (3) That the action is barred by the statute of limitations, which was pleaded in the answer.

Counsel for the plaintiffs make an able and very ingenious argument to the effect that said statute creates a partnership between the two spouses, as to the community property; that on the death of either spouse the record title, whether in the surviving or deceased spouse, immediately terminates, by operation of law, and vests, one-half in the surviving spouse, and the other half in the descendants of the deceased spouse, who in this case are the plaintiffs. After a careful study of the said statute,

and of the decisions of other states construing similar statutes, we have arrived at the following conclusions: 1. The legal title to the lands in question remained in John L. Stephens after the death of his wife Cordelia B. Stephens—one-half for himself, and the other half in trust for the plaintiffs; the whole subject to the debts of the community. 2. The surviving husband was authorized, under the said statute, to sell the said lands for the purpose of paying the community debts that existed at the death of the deceased spouse. 3. Owing to the long lapse of time occurring since the death of the deceased spouse, it is presumed that the surviving spouse sold said lands for the purpose of paying community debts; and this presumption concludes the plaintiffs, they having failed to allege and prove that such sale was for other purposes. 4. The burden of showing the condition of the estate of the community at the time of the death of the deceased spouse, both as to assets and liabilities, devolved upon the plaintiffs. 5. Defendants' motion for nonsuit was properly sustained.

These conclusions are supported by the weight of authority. It would neither be just, reasonable, nor equitable to hold that twenty years after the death of Cordelia B. Stephens, and ten years after the purchase of the lands in question by Milton Kelly for a valuable consideration, in the absence of any allegation or proof showing that said purchaser knew of the existence of the claims of the plaintiffs, and without showing that the sale of said lands was unnecessary to pay community debts, the title, or any part thereof, acquired in apparent good faith by Milton Kelly from one who held, and had held for fifteen years, the paper record title to said lands, could be defeated in the manner attempted by the plaintiffs in this action. A purchaser in good faith from the husband after the death of the wife is not bound to show, in order to support his title against a child of the community, that the sale of the premises conveyed to him was in point of fact necessary to provide for the payment of the community debts. (*Cook v. Norman,* 50 Cal. 638; *Johnston v. Savings Union,* 63 Cal. 554; 75 Cal. 143, 7 Am. St. Rep. 129, 16 Pac. 753; *Carter v. Conner,* 60 Tex. 52; Freeman on Cotenancy and Partition, sec. 149; *Jones v. Jones,* 15 Tex. 143.)

We quote from authorities touching, under statutes similar to the one in question here, on points involved, as follows: "We deem it proper to state that the rights of the plaintiffs and the interveners are purely equitable, and accrued to them at the death of Margaret Burleson, in 1847, nearly twenty years ago. If they desire to enforce them at this late day, they must be prepared to show and do equity themselves. Their rights of inheritance in the community property of their father and deceased mother were not unqualified and absolute, but only attached upon the residue that might be left in the hands of their father after extinguishing the community debts, if there were any. There is no evidence of the community being free from debt, or that there was an administration on her [the mother's] estate. In the absence of any administration, the surviving husband was, for some purposes, the representative of the community, and any sales made by him in good faith, and for the purpose of paying the community debts, or of reimbursing himself for community debts paid by him with his separate funds, would be sustained. And we are of opinion that the plaintiffs and interveners must show the amount of community property left at the death of Margaret Burleson [their mother] deceased, and what has become of it. They must account for what they have received of the community property, and by way of advancements from her to John Burleson, Sr., if anything; and if it be made to appear that either has received an amount equal to his or her share in the community after the payment of debts, then he or she would not be entitled to any part of the land in suit. It must be made to appear that there is a necessity of resorting to the land in this suit, as the last resort from which they can realize their interests in the community, like a purchaser from one tenant in common of a specific part, by metes and bounds, of an undivided tract of land." (*Burleson v. Burleson,* 28 Tex. 383.) Mr. Freeman, in his work on Cotenancy, at section 149, says: "Upon the death of either of the spouses, the community is at once terminated. The survivor, whether husband or wife, cannot alienate any more than his or her moiety, nor make any contracts imposing any liability upon the share of the deceased spouse, unless for the purpose of discharging

the obligations of the community. But, for the purpose of settling the affairs of the community, the surviving husband or wife seems to possess powers somewhat analogous to those of a surviving partner. He or she may sell or convey community property, in good faith, for the purpose of paying community debts. The good faith of the sale, and its necessity, seem to be presumed, and the purchaser exonerated from seeing to the proper application of the purchase money." In *Johnston v. Savings Union, supra,* the court held that the surviving husband could mortgage the community property for the purpose of paying the community debts. Speaking of the mortgage in question in that case, and which had been given by the husband on the common property, the court said: "The mortgage created a lien on the lands of the children [descendants of the deceased spouse], if the necessity existed which authorized him to execute it, or, in any event, if the mortgagee was innocent." Mr. Platt, in his work on Rights of Married Women, speaking of a case similar to the one at bar, says: "Upon her death the husband held as surviving partner: (1) to pay the debts, and (2) as trustee for her descendants." The husband is the head of the family, and the active and acting, and only authorized, business agent of the firm. He makes the contracts, creates the community debts, and may renew or extend them so as to carry them out of the operation of the statute of limitations. No presumption arises in this case, from the lapse of time intervening between the death of Cordelia B. Stephens and the conveyance of the lands in question by her surviving husband to Milton Kelly, that community debts did not exist at the time of the death of the deceased spouse, or that, if such debts then existed, that they had become barred by limitation. It is not unusual to borrow money or purchase property upon long-time payments. Then the plea of the statute of limitations is a personal one, and the bar of the statute is never presumed except in extreme cases, and then only to prevent injustice and to protect the innocent. Such presumption in this case would relieve the plaintiffs from alleging and proving those facts which the law requires them to show before they can recover, and defeat the title, in part, of Milton Kelly, who was apparently a *bona*

*fide* purchaser, for value, under such circumstances as would ordinarily stamp him as an innocent purchaser, and under such circumstances as would ordinarily justify a prudent business man in buying the lands in question. The plaintiffs came into court in this case asking a partition of the lands in question, claiming an undivided interest therein, as above set forth, but failed to show of what the community property consisted at the time of the death of their deceased mother, failed to show what debts the community owed, and failed to show what, if anything, they, or either of them, had received from the common estate; resting their claim against an innocent purchaser from their father solely upon the naked letter of the statute cited *supra.* Asking law, they have refused to do equity. It is unnecessary to pass upon the other questions which arise in this case. The judgment of nonsuit, appealed from, is affirmed, with costs to the respondents.

Sullivan, C. J., and Huston, J., concur.