[No. 719.   October 2, 1897.]

## HATTIE E. CRARY, Plaintiff in Error, v. NEILL B. FIELD, Executor, et al., Defendants in Error.

DECEDENT'S ESTATE—COMMUNITY PROPERTY—RIGHTS OF CHILD IN ESTATE OF MOTHER.—In the absence of any statute of this territory in 1868, determining the rights of a child in the estate of a mother, dying at that time, leaving the father surviving her, they must be determined by the Spanish law on the subject so far as it was in operation in the territory at that time.   Barnett v. Barnett, 9 N. M. 205, ante.

ID.—COMMUNITY PROPERTY—RIGHT OF SURVIVING HUSBAND TO SELL. Under the Spanish law, the surviving husband has the power to sell as much of the community property as may be necessary to pay the community debts; and any transfer of such property made by him, in the exercise of that power, conveys a valid title to the purchaser, and the heirs can not restrain him in his action as such survivor, unless it be shown he is prostituting his power, and committing waste, to their injury.

ID.—COMMUNITY PROPERTY— SALE—FAILURE TO APPLY PROCEEDS TO PAYMENT OF COMMUNITY DEBTS—RIGHTS OF BONA FIDE PURCHASER.—Under the Spanish Law, the rights of a bona fide purchaser of community property are not affected by the fact that the surviving husband fails to apply the proceeds of a sale made by him alone to the payment of the community debts.

ID.—COMMUNITY PROPERTY—SALE—PURCHASER'S TITLE—LEGAL PRESUMPTIONS.—Where a husband, surviving his wife, who died in 1868, sold the community property in 1882, and in 1891 one of the children brought suit for her share of the property, and it did not appear that it was not sold for a consideration adequate to pay the community debts; nor was it pretended that there was any collusion or fraud in its disposition, or that the contract value was not paid; nor appeared that the proceeds were not properly applied; nor that the community estate had been so administered she could not receive her share of it without damage to an innocent purchaser; nor that she could not secure redress upon the bond of the administrator,—Held:   That the legal presumptions, precluding a reasonable doubt of a paramount title in the purchaser, must be applied.

*Error*, from a judgment for plaintiff, to the Second Judicial
District Court, Bernalillo County.   Reversed and re-
manded.

CHILDERS & DOBSON for plaintiff in error.

Under the Spanish and Mexican law, the interest of the
wife in the ganancial or community property was not regarded
as a part of her estate.    This interest was not transformed,
by her death, into a legal right.    Packard v. Arellanes, 17
Cal. 539; Comp. Laws, sec. 1416; Panaud v. Jones, 1 Cal.
513; Ord v. De La Guerra, 18 Id. 74; Scott v. Ware, 13 Id.
470; Ballinger on Comm. Prop., secs. 230, 231, 239; Cook
v. Norman, 50 Cal. 638.

The husband as survivor, especially if vested with the
legal title of record, is trustee, even if he has no power of
disposition, except for the payment of debts; and can convey
the legal title to a bona fide purchaser for value.    See cases
cited supra.    Ballinger on Comm. Prop., secs. 230-233;
Platt's Prop. Rights Married Women, 127, 129-143.    See,
also, Meeks v. Hohn, 20 Cal. 620; Chapman v. Hollister, 42
Id. 462; Meeks v. Kirby, 47 Id. 168; Platt Prop. Rights
Married Women, sec. 39, pp. 143, 144.

In discharge of his duties, either as administrator or as
survivor, sale of community property, after the lapse of con-
siderable time, will be presumed to have been made for the
purpose of paying community debts.    Cook v. Norman, 50
Cal. 634; Good v. Combs, 28 Tex. — ; Hill v. Parker, 36 Id.;
Wallace v. Howard, 34 Id.; Ballinger on Comm. Prop., 230,
sec. 231.

There was no rule of law requiring the husband to ex-
haust the personalty before resorting to the realty.    Wenan
v. Stengel, 48 Tex. 384.

Where the husband sells, the purchaser need not see
to the application of the purchase money.    Platt on Rights
of Married Women, 137; Ballinger on Comm. Prop., 295.

If the heir has received his share of the estate or any

portion of it, this may be shown by the purchaser by way of defense. Platt on Rights Married Women, 135, 136, and citations; Connor v. Huff, 48 Tex. —.

FRANK W. CLANCY for defendants in error.

Our statute has never made any distinction between the rights of a surviving husband and those of a surviving wife. If there could exist any presumption in favor of the validity of a deed by a survivor of a community, this deed, on its face, overcomes any such presumption in this case. Comp. Laws, 1884, secs. 1410, 1411; Ballinger on Comm. Prop., sec. 222; Gale v. Davis, 4 Mart. 645; Chavez v. McKnight, 1 N. M. 147; Bennett v. Fuller, 29 La. 663; Bronsard v. Bernard, 7 Id. 222; Germand v. Gay, 9 Id. 580; Tugwell v. Tugwell, 32 Id. Ann. 852; Poutz v. Bistes, 15 Id. 636; Robinson v. McDonald, 11 Tex. 385; Thompson v. Cragg, 24 Id. 582; Kircher v. Murry, 54 Fed. Rep. 617.

No presumption can be raised to support the title of plaintiff in error. Ballinger on Comm. Prop., 243; 1 Dev. on Deeds, sec. 356.

The deed from the administrators of Antonio Sandoval is the common source of title in this case, and plaintiff in error can not question its validity. Jackson v. Brown, 10 Johns. 292; Jackson v. Streeter, 5 Cow. 529; Phelan v. Kelley, 25 Wend. 389; Jackson v. Walker, 7 Cow. 637; Weishurt v. Jones, 78 N. C. 361; Bank v. Harrison, 39 Mo. 433; Miller v. Hardin, 64 Id. 545; Roosevelt v. Hungate, 110 Ill. 595; McCrudy v. Lansdale, 58 Miss. 345; Horning v. Sweet, 27 Minn. 277; Griesler v. McKinnan, 44 Ark. 517; Stafford v. Watson, 41 Id. 17.

There is no evidence of any advancement by Miguel Montano to his daughter, Casiana. 2 Dev. on Deeds, 817.

SMITH, C. J.—It is claimed by defendants in error that Miguel Montano, on the fifth day of October, 1862, acquired title, by deed from Jose Serafino Ramirez, Tomas Caveza De Baca and Jose Manuel Gallegos, to a piece of land situated

in what is now the City of Albuquerque, he being at that time married to Clara Candelaria (the conveyance offered in evidence to show the acquisition of title is plaintiff's Exhibit 1); that a presumption of law arises, from the fact of acquisition during coverture, that the land became community property, and upon the death of Miguel Montano's wife, in April, 1868, title to an undivided half interest in said tract of land at once vested in the five children of the said Montano and wife, who survived their mother. Miguel Montano and two of those children, Candelaria and Ruperta, married respectively to Nicolas Lucero and Nicolas Apodaca, and their husbands, conveyed, by deed, dated January 27, 1882, a portion of said original tract to C. W. Lewis (defendant's Exhibit 2). Miguel Montano died on the 16th day of February, 1885. Thereafter, by subsequent conveyances, the part so conveyed to Lewis was conveyed to the plaintiff in error, Hattie E. Crary. This suit was originally brought on the twenty-first day of March, 1891, by Casiano Montano De Sanchez and Nicolas J. Sanchez, her husband, against the plaintiff in error and George F. Crary, her husband, to recover the land described in said deed from said Miguel Montano and others to the said Lewis (defendant's Exhibit 2). The said Casiano Montano De Sanchez was one of the five surviving children of the said Miguel Montano and wife. Said Sanchez and his wife died after the bringing of the suit, leaving, surviving them, an infant child, James Sanchez. The death of said plaintiffs having been suggested, it was ordered that the suit be revived in the name of Neill B. Field, executor of the said plaintiff Casiano Montano De Sanchez, and in the name of her son, James Sanchez, by the said Neill B. Field, his statutory guardian and next friend. The death of George F. Crary having been subsequently suggested, the suit proceeded in the name of the said Neill B. Field, as such executor, and said James Sanchez, by said Field, as his guardian and next friend, as plaintiffs, against the plaintiff in error, Hattie E. Crary, as defendant. The defendants, had, previous to the revival of said cause and the death of the parties, filed a plea of the

general issue to the declaration, and upon this issue the cause was tried, and no evidence was offered of the qualification of Neill B. Field as executor, nor was the last will and testament of his testator put in evidence to show that, as executor, he had any interest whatever in the property or the possession thereof. The only evidence in the record, besides the presumption of law, that the land alleged to have been conveyed by the persons who described themselves in the deed (exhibit 1) as executors of the estate of Antonio Sandoval, deceased, is the form in which the deed from Miguel Montano (exhibit 2), was executed. It is signed "Minor Heirs of Miguel Montano [Seal]," followed by the signatures of the two married daughters, who survived, as above stated, the death of their mother, and who united in this deed with their husbands. Upon the trial of the case, the plaintiff in error objected to the admission of Exhibit 1, purporting to be a deed from the executors of Antonio Sandoval, upon the grounds that the deed was not under seal, and that no authority from the probate court had been shown on the part of the grantors, as administrators or executors, to make said deed and convey title; that the probate court at that time had no power to authorize the making of said deed; and that, as the deed recited authority from the probate court preliminary to its admission in evidence, the authority should be shown. The court overruled the objection, and admitted the deed in evidence. No such authority from the probate court for the making of said deed was shown. It was attempted to be shown by witness Whiting, who had been probate clerk in the years 1869, 1870, and 1871, that he had found a book, which was produced on the trial, but not offered in evidence, and that was the only book of reference in the evidence, which book was labeled "Wills and Testaments," and that that book contained no such order or authorization in the probate clerk's office. No proof was offered that there had ever been any such record or order made, and that the record was lost. There is no proof in the record as to when Miguel Montano took possession of the said tract of land, except that the

evidence shows that he had a house situated on part of it, in which he lived, and was living there in the years 1864 or 1865. He may have been living there, for all the proof shows, long anterior to his marriage. There is also in evidence a deed from Miguel Montano to the said Casiano Montano De Sanchez, dated the second day of October, 1883, reciting that, in consideration of $312, he thereby conveyed the land described in said deed. The witness Whiting testified that the land contained in the said deed, marked "Exhibit 8," above referred to, was a part of the tract mentioned in the said deed (Exhibit 1) to the said Miguel Montano, and that it was about half the original tract in area, and that in 1883, when this deed was executed, that and other pieces of land, parts of the original tract in possession of, and being disposed of by, the heirs of Miguel Montano, including the said Casiano, largely exceeded one-tenth interest in the whole tract. The records of the probate court, offered in evidence by plaintiff in error, show that Miguel Montano took out letters of administration on the estate of his wife on the twenty-second day of April, 1868, but they do not show that there has ever been any final settlement of said estate or any inventory thereof. All the records found in the probate court relating to this administration were produced upon the trial. See Exhibit 6. Upon the death of Miguel Montano, Nicholas J. Sanchez took out letters of administration, but the records of the probate court do not show that any inventory of assets or indebtedness was made, or that anything else took place except the mere granting of letters of administration; and there is no evidence as to the condition of the estate of the marriage community of Miguel Montano and wife as to the assets and debts at the time of her death, or subsequently, at the time of his. Upon the close of the trial, upon this state of the record, the court instructed the jury to find a verdict for the plaintiffs for an undivided one-tenth interest in the piece of land described in the declaration. Plaintiff in error filed a motion for a new trial, alleging that the verdict was contrary both to the law and to the evidence, which motion was overruled.

Assignments of error: "Now comes the plaintiff in error, and assigns as error committed by the court in the trial of said cause, by the court below, the following, to wit: First, The court erred in admitting in evidence, over the objection and exception of the plaintiff in error, Exhibit 1, the same being deed from administrators of the estate of Antonio Sandoval to Miguel Montano. (Page 15 of Transcript.) Second. The court erred in admitting, over plaintiff in error's objection and exception, the testimony of Nicolas Lucero as to the ownership of the land in ·question and adjoining lots. (Transcript, pages 16, 17, and 18.) Third. The court erred in similarly admitting the testimony of Major H. R. Whiting (Transcript, pages 26 and 27) in regard to book labeled 'Wills and Testaments,' said book not having been offered in evidence, and not being material if it had been offered, under the statement of counsel made at page 25 of transcript, and the testimony of the said Whiting not tending to supply any lost record of said court containing any order authorizing the sale of said property by the administrators of the estate of Antonio Sandoval, deceased,.and no foundation having been laid by proof that any such record did exist. Fourth. The court erred in directing a verdict in favor of both plaintiffs in said cause, the evidence not showing any right in the executor of Casiano M. Sanchez, deceased, to recover. Fifth. The court erred in directing a verdict in favor of the plaintiffs in said cause, because there was evidence to go to the jury tending to show that Casiano M. Sanchez, deceased, the mother of the infant plaintiff, had received her full share of her mother's interest in the community estate of her deceased father and mother, Miguel Montano and wife. Sixth. The court erred in giving instructions to the jury to find a verdict for the plaintiffs, said verdict not being sustained by the evidence in said cause. Seventh. The court erred in many other particulars, apparent upon the face of the record."

It becomes necessary on the consideration of this cause to pass upon the rights of the children of Miguel Montano and

his wife, Clara Candelaria, to her estate, at the
date of her death, during April, 1868; and, as
our statutes as of same date do not declare upon
such problem, we are constrained to ascertain
the provisions of the civil law upon the subject
of community property so far as they were operative in this
territory when Clara Candelaria departed this life.    See Bar-
nett v. Barnett (decided at this term), 50 Pac. Rep. 337.    It
is declared in section 1, chap. 2, p. 32, Comp. Laws, 1865, that
the laws heretofore in force concerning descents, distributions,
wills and testaments, as contained in the treatises on these
subjects written by Pedro Murillo De Lorde (Velarde), shall
remain in force so far as they are in conformity with the con-
stitution of the United States and the state laws in force for
the time being. Article 49, chap. 4, sec. 1, of G. Schmidt's pub-
lication on the Civil Law of Spain and Mexico, is as follows:
"Husband and wife are entitled to an equal share in the com-
munity, although one of them should at the time of marriage
have been without any means.    At the same time, both are
liable in equal proportions for the losses and debts incurred
during its existence." Article 67, sec. 4, chap. 2, of same work,
says:    "On the death of the wife, the surviv-
ing husband acquires the absolute ownership
and full administration of one-half of the mat-
rimonial gains, and can freely dispose of
the same, as well by contract inter vivos as by testament, with-
out being compelled to reserve any portion thereof for the
children of the marriage, provided he does not deprive them
of their lawful portion."    It is manifest that the interest of
the heirs passes to them cum onere, with the burden of the
debts created during the coverture of their parents, and that
though said interest may be an absolute right, and attached at
the moment of the death of their immediate ancestor, it is
nevertheless indispensable that authority should exist to take
charge of the community property, and administer it for the
payment of the debts to which it was subject.    In recognition
of this status, the surviving husband is authorized by the civil

DECEDENT'S
estate: commu-
nity property:
rights of child in
estate of mother.

COMMUNITY prop-
erty: right of
surviving hus-
band to sell.

law of Spain and Mexico to sell as much of the community property as may be necessary to pay the community debts, and, in the exercise of this right and discharge of this duty, any transfer of property made by him, be it personal or real, conveys a good title to his vendee, and the heirs are without authority to interfere with or restrain him in his action, as survivor, unless it shall appear that he is prostituting his power, and committing waste, to their detriment. Such were the obligations, and such the privileges, of the surviving husband, under the civil law of Spain and Mexico. On September 22, 1846, by the Kearney Code, it was provided that prefects shall grant letters testamentary and of administration; and on the twelfth day of January, 1852, an act of the legislature provided for the administration and distribution of the estates of decedents. It is plain that these acts were intended to provide against the abuse of power by the surviving consorts, to increase their efficiency by specific directions to them as to their duties, by requiring them to give a good and sufficient bond for an honest execution of their trust, and to make an accurate inventory of the community property. It can but be recognized that such conditions were imposed for the good of those whose interests were committed to them. It can not be properly contended that a surviving husband was by such requirements abridged in his power derived from the civil law to administer the community estate; and as there is no statute in this territory restricting him, when qualified according to statute, from proceeding to settle up such estate to the extent of paying its debts, we will consider him, notwithstanding the foregoing statute, not less authorized to dispose, as survivor, of the community property for the payment of the community debts, than he was under the civil law.

It appears that Miguel Montano qualified as administrator of the estate of his wife on the twenty-sixth day of April, 1868, and that he remained in possession of the community property without interruption or objection continuously from that date until January 27, 1882, when he conveyed a part of the

COMMUNITY property: failure to apply proceeds to payment of community debts.

property to one C. W. Lewis, and that on the second day of
October, 1883, he parted with another portion of the property
by deed to Casiano Montano De Sanchez; but it is not shown
in either case in what capacity he was such grantor, nor does
it seem material whether he acted as survivor or administrator,
as the presumption must be that he was realizing for the pur-
pose of discharging the community debts. If he acted as
survivor, his right under the civil law was undisputable; and
if as administrator, he was duly authorized, and his transfer
of the title was valid. That it is not shown of what the
community property consisted, that it is not shown that the
portion of it sold was for the discharge of the community debts,
that it is not shown that the proceeds of the sale were applied
to the payment of the community debts, can not affect or
destroy the rights of the bona fide purchaser for value. If
Montano were abusing his trust as survivor, he should have
been restrained by those whom he was wronging; and, if he
were exceeding his authority as personal representative, re-
dress should have been sought upon his bond. That Casiano
Montano De Sanchez recognized the right of her father to sell
the community property is manifest; that she became pur-
chaser of a part of it from him is not less true; and that this
action of hers, and the payment of purchase money by her,
indicate her approval both of the propriety and power of his
conduct, in connection with her sisters, of converting a part
of the same property into cash, may be logically claimed; and
that she was cognizant that the proceeds were rightly used,
either in payment of the debts of the community, or in the dis-
tribution among the parties entitled, may be fairly inferred
from her failure for many years to assert any antagonistic
rights in the premises. It may be justly suggested that she
acquiesced in the proceedings of her father at the time of their
performance, as it does not seem to have occurred to her until
after a long interval of time that her interests had been ig-
nored and sacrificed.

May it not be claimed that, as there had not been any
sale of the community realty for fourteen years, the surviving

spouse and the children continued to hold it as community property, and that all the parties acquiesced in such situation, and are now estopped from impugning it? It appears in article 57 in the publication of Schmidt on the Civil Law that "the dissolution by death takes effect from the moment of its occurrence, although heirs of the deceased spouse continue to live with the survivor." The following article (58) says: "But though in such case the community has ceased to exist, a new one may be created between the said heirs and the survivor if they continue to keep their property in common, but in such event the gains and losses are apportioned among each in proportion to his (or her) share," etc. That Miguel Montano, as surviving partner, was authorized to dispose of the community property for the purpose of paying the debts of the community, is established by abundant authority. In Lang v. Moody, 2 Tex. Land Rep. 378, the court, in considering the question now under advisement, said: "Under the repeated decisions of this court, it must be held as conclusively settled that the survivor of the marriage relation, without administration upon the estate of the deceased member in any other mode expressly provided by statute, has power as survivor to sell the community property for the purpose of paying the debts which are a charge upon it." In Rudd v. Johnson, 60 Tex. 91, it is declared that "the husband, after the death of of the wife, may sell the community property for the purpose of paying the community debts, without first qualifying as survivor in community." In Ballinger on Community Property (section 230) it is declared that "it is the duty of the survivor to wind up the affairs of the community, and liquidate the debts. The right of the survivor to make sales of the community property would seem to be the necessary consequence of the obligation of such survivor to discharge the debts of said partnership." In section 231 the same author says: "If there be community debts, the survivor may appropriate community property for their payment, and has power to wind up the community affairs. It is so recognized that sales fairly made by him for that purpose will not be set aside.

Where sales are made by the survivor without qualifying under the statute, the purchaser is not bound in his own protection to see that his money is applied to the payment of community debts. Where community debts exist, the survivor has the same power to sell or incumber the community homestead, and liquidate them, as he has of any other community property; and he may do this without qualifying under the statute. The survivor has the power to administer the community for the purpose of paying the community debts without hindrance on the part of the heirs, although they may prevent by injunction the survivor from applying the community property to the other uses than liquidating debts." Says the same author in section 224: "The administration of the succession involves with it that of the community, and the administrator may rightfully cause community property to be sold to pay debts of the succession, and the wife or her representative can claim nothing until the debts are paid." Says the same author, in section 225: "It is held in Hawley v. Bank, 26 La. Ann. 230, that 'upon the dissolution of the community by the death of the wife, the responsibility of the husband is not changed. He is absolutely and personally bound for their payment, and his separate property may be seized for their acquittal; hence the community property is justly under his control until the debts are paid. Before the final settlement and discharge, heirs have no absolute right to the property of the community that can be legally recognized. Their interest in it continues contingent and uncertain until, by the result of the final settlement of all the obligations of the community, it is known whether or not there are assets remaining for partition between the survivor and the heirs of the deceased.' The respective interests of the survivor and heirs of the deceased spouse may attach at the moment of the dissolution of the community, but they are so subject to the payment of the community debts that they can not be recognized as certainly substantial." The following is from Ballinger on Community Property, as to the Spanish Law (section 230, p. 293): "Qualified powers of management and dispo-

sition of the community estate are possessed by the survivor, and take effect immediately upon the dissolution of the community, but the absolute power of management and disposition is acquired only when the survivor qualifies as provided by the statute; and, by such qualification, the survivor is vested with the same power and discretion in the execution of the trust thereby as the husband had during life to manage, control and dispose of the common property as the head of the connubial firm. On the death of either spouse, the decedent's estate becomes entitled to one-half of the community property; but the heirs can claim and finally hold only such portion as may remain after the payment of all the just debts and demands against the community." In Cook v. Norman, 50 Cal. 633, the court, in passing upon the right of the surviving husband to sell the community property for the payment of debts, said: "The principal question, however, is whether a purchaser in good faith from the surviving husband, under such circumstances, is bound to show, in order to support his title as against a child of the community, that the sale of the premises conveyed to him was, in point of fact, necessary to provide for the payment of the community debts; and this question must, we think, be answered in the negative. The authority to sell the property of the community belongs to him as a survivor of the community, and is the same in its nature as was his power to do so during the existence of the community. The death of the wife did not deprive him of his power in this respect, and the purchaser dealing with him in good faith acquired a title valid in point of law, as though the community had not been dissolved." Febrero declares that "there must be deducted all legitimate debts which the husband or wife with his permission, or both jointly, may have contracted on account of the conjugal partnership, and which must be paid out of the ganancial property, and that the residue is only divisible, and is what is called the 'inheritance.' " Febrero Novissimo, vol. 6, p. 124. Says Ballinger on Community Property (section 232, p. 297): "As

against purchasers, after a great lapse of time, the authority
to sell will be presumed; in other words, the sale will be pre-
sumed to have been made for the purpose of satisfying com-
munity debts." Says Ballinger (section 231): Where sales
are made by the survivor without qualifying under the statute,
the purchaser is not bound, in his own protection, to see that
the purchase money is applied to the payment of community
debts." It has been repeatedly adjudicated in Texas that
"upon the death of one of the spouses, the community estate
passes to the survivor, charged with the community debts, and
is liable to be sold by such survivor under execution to satisfy
such debts. The deceased's portion descends to the children,
subject to the right of the survivor to use it in payment of
such charges, and the right of creditors to enforce upon it
their community demands." The same authorities say: "And
it would seem that when those interested in an estate inter-
pose no objection to the management and control of the com-
munity estate by the survivor without qualification under the
statute that purchasers from the survivor, if there be com-
munity debts bearing a reasonable proportion to the value of
the property sold by the survivor, ought not to be disturbed
in their titles acquired in good faith. In the absence of such
interposition, purchasers may well believe that those interested
in the estate are content that the survivor shall exercise the
powers which he possesses to sell property to raise means with
which to discharge debts which are a charge upon such prop-
erty."

It seems needless to multiply authorities to establish the
conclusion that, under the civil law, the spouses own no speci-
fic part of the community estate before its dissolution, and
that they do not acquire, by death or other separation, sever-
alty in any specific part, until the charges and expenses to
which it may be subject have been satisfied, and partition
effected. Liquidation of the community estate may be de-
manded and forced, but no specific property can be claimed,
the interest of the heirs being residuary in one-half of the

remainder after the payment of the debts.    It does not appear that the husband was divested of his control over the community estate for the payment of its debts by any legislative act in existence at the time of the death of Clara Candelaria.    The statute directing administrations, and declaring the distribution of the inheritance, does not, either expressly or by implication, modify the status of the heirs at the death of their mother.    The one prescribes the qualifications of the administrator, and the other apportions the estate after the payment of the debts for which it is liable.    In Leatherwood v. Arnold, 66 Tex. 416, 417, the court, speaking through Robertson, J., in clear and concise terms, outline the powers and duties of the survivor, under the statute:    "By qualifying under the statute, the survivor acquires over the whole community estate the same right of management, control and disposition passed by the managing partner during the life of the partnership. He is a trustee of a unique character, being the owner in his own right of one half of the trust estate."    "Trustees must generally account for every item of the trust estate, but the responsibility of the survivor can only be fixed by aggregates. Inquiry into the details of his administration is inconsistent with the breadth of his power and discretion.    It is debited with the value of the estate and its revenue, and credited with disbursements, and must account to creditors or distributees for the remainder."

"The power possessed by a surviving husband or wife, who qualifies to administer a community estate, is much broader than that possessed by an ordinary administrator; and what such a survivor may legally do, in the exercise of that power, will bind the estate."    James v. Turner, 78 Tex. 244. That the Spanish law, as hereinbefore announced, as to the property rights of married persons, prevailed in 1868, in the territory of New Mexico, is our conclusion; and that its application to this case is consonant with justice seems palpable.

It does not appear that the property involved was not sold for an adequate consideration to pay the community debts.

It is not pretended that there was collusion or

community property: sale: purchaser's title: legal presumptions.

fraud in the disposition of it by Montano, or that the contract value was paid. It does not appear that the proceeds were not properly applied. It is not shown that, if Clara Candelaria did not receive a proportion of the said proceeds, even if sold for partition, the community estate has been so administered and distributed that she can not procure her share of it without damage to an innocent purchaser; nor is it shown that, if she has been deprived of her rights, she can not secure redress upon the bond of the administrator. The presumptions of the law, not having been repelled, must be applied, and they seem to preclude a reasonable doubt that the title of the plaintiff in error is paramount, and must be sustained.

We do not deem it necessary to consider any other issue presented by opposing counsel. The judgment of the lower court is reversed and remanded for a new trial of this cause.

Laughlin, Hamilton and Bantz, JJ., concur.